LAW OFFICES OF
# ADAM L. PLOTKIN
A PROFESSIONAL CORPORATION

621 Seventeenth Street, Suite 1800
Denver, Colorado 80293
Telephone (303) 296-3566
Facsimile (303) 296-3544

April 5, 2010

**Via E-Mail and U.S. First Class Mail**

David Larson, Esq.
Law Offices of David M. Larson
405 S. Cascade Avenue, Suite 305
Colorado Springs, CO 80903

> Re: **Joshua Jackson v. Diversified Collection Services, Inc. and Stacy L. Key, 09-CV-00680-WDM-BNB**

**FRE 408- FOR SETTLEMENT PURPOSES ONLY**

Dear Mr. Larson:

I wanted to take a moment and introduce myself. My name is Joe Lico, and I am a new attorney at Adam L. Plotkin, P.C. I joined the firm in early in March and this case is one that has been assigned to me. I have spent the last few weeks reviewing the pleadings, depositions, and written discovery. As trial approaches, I believe it beneficial to both parties to discuss the case and its status.

After review of both your Original Complaint and First Amended Complaint, the crux of Plaintiff's allegations is that Defendants violated various provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ("FDCPA"). Your allegations are that the Defendants committed multiple violations that were both willful and intentional. This letter outlines my analysis of your client's allegations. Diversified Collection Services ("DCS") and Ms. Key do not concur with the allegations made in the Complaint. My clients believe the allegations against them are completely without merit and lacking in substantive evidence.

It appears Mr. Jackson obtained a student loan from Great Lakes Higher Education Guaranty Corporation while he was attending college in Mississippi. A balance of approximately $13,355.46 was unpaid when the account was assigned to DCS for collection. At most, there appears to have been only four actual live telephone calls with Mr. Jackson over a three week period. It should also be noted that on two of the actual discussions, Mr. Jackson was the person that initiated the call.

**Exhibit B**

David Larson, Esq.
April 5, 2010
Page 2

Your client first alleges that DCS communicated with him at a time or place that DCS knew or should have known to be inconvenient for your client, and also that DCS contacted Mr. Jackson at his workplace with knowledge that his employer prohibits such calls in violation of §§ 1692c(a)(1) and (3) of the FDCPA. These allegations appear to be completely off base. As stated above, DCS and your client spoke on only four occasions, two initiated by Mr. Jackson. DCS initiated phone calls to the numbers provided by Mr. Jackson. As documented evidence shows, including Ms. Keys' deposition, at no time did Mr. Jackson inform DCS that it was a bad time or to not call a specific number. The phone calls were placed at a variety of times and no information was ever given to DCS about inconvenient times that DCS should avoid calling. In a review of the evidence, I see nothing to support this allegation. At best, Plaintiff has some co-workers that can testify to phone calls being received by Mr. Jackson. No dates, times or knowledge of who was on the phone can be ascertained. Their lack of any detail makes the impact of their testimony *de minimis,* and questionable at best. DCS provides training for its employees to address the handling of a variety of situations, and all collectors are required to document in the account notes what happened during a call and what was said. Not one note in the account notes reflects notification of a bad time or place to call.

The second allegation made by your client is that DCS engaged in conduct the natural consequences of which was to harass, oppress, and abuse your client, using obscene or profane language, in violation of §§ 1692d preface and (d)(2) of the FDCPA. DCS had four conversations with your client – two initiated by Mr. Jackson himself. Even if all your client's allegations are correct, it is indisputable that there were an extremely limited number of contacts with Mr. Jackson. Clearly, no reasonable juror will consider that harassment. Accordingly, I can only assume you hope to demonstrate that the language used by Defendants abused Mr. Jackson, but I have seen nothing alleging obscene or profane language. Subsection 1692d(2) is meant to deter language that is similar to profanity or obscenity, such as name calling, racial slurs, and other remarks that are similar in their offensiveness to obscene or profane remarks. In any event, I find it difficult to believe that the attempt by Ms. Key to collect a debt abused Mr. Jackson. In fact, including his deposition testimony, Mr. Jackson has never said anything to the contrary.

Next, Mr. Jackson alleges DCS used false, deceptive, or misleading representations, in violation of § 1692e of the FDCPA. Nothing could be further from the truth. Mr. Jackson's allegations that Ms. Key misrepresented the status of his loan and threatened him with wage garnishment are not consistent with the clear facts in this case. Nor are they consistent with DCS' policies and training with respect to potential administrative wage garnishment ("AWG"). Moreover, even if such discussions had occurred regarding the potential for administrative wage garnishments, such discussions were not in fact misrepresentations. As I am sure you are aware, Plaintiff's account with DCS is a federally guaranteed student loan. As a federally guaranteed student loan, Plaintiff's account is subject to the Higher Education Act of 1965, as amended, 20 U.S.C. § 1070, *et. seq.* (the "HEA"). Pursuant to the HEA, defaulted federally guaranteed student loans are subject to AWG. In the context of purported threats of AWG, the

**Exhibit B**

David Larson, Esq.
April 5, 2010
Page 3

operative inquiry is whether AWG is authorized by law and by the creditor. If Ms. Key informed Mr. Jackson about potential AWG, this would not amount to a misrepresentation, as DCS is authorized by the guarantor and by law to process administrative wage garnishments. Ms. Key would not have informed Mr. Jackson what the dollar amount of the AWG would be as she had no knowledge of his employment and in fact, AWG is handled in another department at DCS.

Finally, Mr. Jackson alleges Defendants violated the general provision of §1692f. "Unfair" and "unconscionable" are not defined in the FDCPA. However, the few communications DCS had with Mr. Jackson show no signs of any unfair or unconscionable behavior. All communications with Mr. Jackson were documented in the account notes. In addition, employees of DCS have a general script they follow in this type of situation and there was no need to divert from such script. According to the account notes and Mr. Jackson's own deposition testimony, the phone calls were cordial and had no signs of hostility.

In addition, DCS' collectors are specifically trained how to document what was said in the account notes and to specifically note if they are told not to call a certain number or certain time. Each employee is given a script to follow and briefed on compliance with the FDCPA. Even if the alleged violations set forth in the Amended Complaint were true, which DCS vehemently denies, the violations would have occurred notwithstanding the maintenance of DCS' procedures designed to avoid such an error. Therefore, the bona fide error defense negates any of DCS's purported liability. See, 15 U.S.C. § 1692k(c).

Moreover, even assuming, *arguendo*, the bona fide error defense fails, Mr. Jackson has no damages. Among the factors provided for in the FDCPA with regard to statutory damages, the court is to consider "the frequency and persistence of noncompliance …, the nature of such compliance, and the extent to which such noncompliance was intentional …" 15 U.S.C. § 1692k(b)(1). DCS' account notes clearly indicate when each call with Mr. Jackson transpired. There were four actual conversations with Mr. Jackson over a three week period. At no time did your client ask DCS to stop calling. In fact, most of the calls were negotiations to set up a payment plan. Thus, any alleged violation was clearly not frequent or persistent and none were intentional. Based on all these facts, DCS believes that no damages would be awarded in this case.

It should also be noted Mr. Jackson has admitted to suffering no harm in this matter. He was not disciplined at work, did not suffer any loss in income, and has incurred no expenses. Mr. Jackson's claim for emotional distress carries a heavy burden. Mr. Jackson's self-serving testimony is his only claimed evidence as to his alleged pain and suffering. Mr. Jackson did not seek medical advice and his complaints of headaches and loss of appetite are completely unsupported. Transitory symptoms of emotional distress do not support a claim for emotional distress and unsupported self-serving testimony by the plaintiff is not sufficient to establish emotional distress damage

**Exhibit B**

David Larson, Esq.
April 5, 2010
Page 4

  As explained, DCS believes it has a solid defense against the allegations contained in the Complaint. I have participated as a lawyer on both sides and my experience has taught me the window for settlement grows smaller as trial draws near. Having operated under an ever decreasing state budget as an Assistant Attorney General, I realize how important it is for parties to try the cases they deem appropriate. Court time and attorney time is expensive and valuable. I cannot see how a person with no more than four communications, no damages and no supporting evidence fits into this category. As a former prosecutor with over one hundred jury and court trials, I do not see how Mr. Jackson can prevail on this case. As such, while I see no incentive for Mr. Jackson to try this matter, I see every incentive for DCS to prove the groundless nature of Mr. Jackson's claims.

  I understand a settlement conference occurred not too long ago. The offer that was last submitted by Defendants was three thousand five hundred dollars ($3,500.00). I recognize that all parties will incur further costs and expenses the longer this matter continues in litigation. Before I invest any more time and effort in preparing this case for trial, my clients have authorized me to make one last attempt to settle this matter for the three thousand five hundred dollars ($3,500.00) previously offered. By my calculations, motions and trial briefs are due on Friday, April 23, 2010. Accordingly, this offer will remain open until 5:00 PM Mountain Time on Friday, April 9, 2010. After such time, any settlement will require the payment of DCS' costs and fees incurred subsequent to April 9, 2010.

  There comes a time for a defendant when settlement is no longer appropriate and it is best for the defendant to try the case. That time is rapidly approaching. My clients hope a resolution to this case can be reached. However, if terms of settlement cannot be reached, my clients intend to vigorously defend themselves from these claims.

  I have heard from Adam and Steve that they have both enjoyed solid working relationships with you over the years. I fully expect that you and I will have the same. Notwithstanding the foregoing, I must satisfy my duty to zealously represent the best interests of my clients and accordingly, must point out the frivolous and groundless nature of your client's claims. Evidence is now closed in this case. Yet, as shown above, Mr. Jackson's sole claimed evidence is his own self-serving testimony, which actually supports DCS' defenses in all regards other than his claims that he was asked not to be called at his workplace and that an inappropriate AWG amount was stated to him. Mr. Jackson's self-serving testimony simply cannot satisfy his burden of proof given contrary testimony of DCS' witnesses and the documentary evidence contradicting his allegations that DCS has previously tendered in this matter.

  Please feel free to contact me should you wish to discuss this matter. I look forward to working with you on this and other cases in the future.

                 Sincerely,

                 Joseph J. Lico

**Exhibit B**